UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHONGQING LONCIN
ENGINE PARTS CO.,
LTD., also known as
Chongqing Lightweight
Automotive Components
Co., Ltd., and NANJING
LONCIN NEMAK
PRECISION MACHINERY
CO. LTD.,

                  Plaintiffs,

              -v-                    5:21-CV-84

NEW MONARCH MACHINE
TOOL, INC.,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

REN RONG PAN ATTORNEY AT LAW   REN RONG PAN, ESQ.
Attorneys for Plaintiffs
45 Division Street, 2nd Floor
Suite 201
New York, NY 10002

HANCOCK ESTABROOK, LLP       ANNELIESE ALIASSO, ESQ.
Attorneys for Defendant
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On January 14, 2021, petitioners Chongqing Loncin Engine Parts Co., Ltd. ("Chongqing") and Nanjing Loncin Nemak Precision Machinery Co., Ltd. ("Nanjing"), two Chinese engine parts manufacturers, filed this action under the Federal Arbitration Act ("FAA") and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") seeking to confirm an arbitration award they received from the China International Economic & Trade Arbitration Committee ("CIETAC") against respondent New Monarch Machine Tool, Inc. ("New Monarch" or "respondent"), an American tool manufacturer based in Cortland, New York.[1]

The petition has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND[2]

Chongqing and Nanjing (collectively "petitioners") are two Chinese companies that purchase and import machine tools used in the manufacture of automobile engines and other machine parts. New Monarch is an

---

[1] Petitioners initially laid venue in the Southern District of New York. However, on January 19, 2021, U.S. District Judge Gregory H. Woods issued an order to show cause why the matter should not be transferred to the Northern District of New York in light of the petition's allegation that respondent was "located" in Cortland County. See Dkt. No. 15. After petitioners consented, the case was transferred to this judicial district pursuant to 28 U.S.C. § 1406(a). Dkt. No. 16.

[2] The background is taken from the petition and attached exhibits.

American company that manufactures and exports machine tools to

international customers in China and elsewhere.

As relevant here, in late 2013 and early 2014 the parties entered into

three sales contracts (No. DLBJ130018, No. DLBJ130019, and No.

DLBJ140010) in which New Monarch agreed to supply and install certain

CNC boring machines at petitioners' manufacturing facilities in China.  Each

sales contracts contained an arbitration clause:

> All disputes in connection with this Contract or the
> execution thereof shall be settled friendly through
> negotiation.  In case no settlement can be reached, the
> case may then be submitted for arbitration to the
> International Economic and Trade Arbitration
> Committee of the People's Republic of China in
> accordance with its rules and procedures.   The
> arbitration shall take place in Beijing, China.   The
> Chinese laws shall be applied in arbitration.   The
> decision of the Arbitration Committee shall be final
> and binding upon both parties.   Neither party shall
> seek recourse to a law court or other authorities to
> appeal for revision of the decision.   Arbitration fee
> shall be borne by the losing party.  During the course
> of the arbitration proceedings, the provisions of this
> Contract shall not be affected thereby except for the
> portion of this Contract under the arbitration and this
> Contract shall continuously be performed.

On August 16, 2016, petitioners claimed that New Monarch had

materially breached its obligations under the sales contracts by, *inter alia*,

defaulting on the delivery and installation of the agreed-upon machines.

Petitioners declared that the three sales contracts were therefore terminated

under the United Nations Convention on Contracts for the International Sale of Goods ("CISG").

On September 13, 2016, in accordance with the arbitration clause written into each sales contract, petitioners applied for arbitration to CIETAC, an arbitration institution headquartered in Beijing, China.[3] Although CIETAC initially opened three separate arbitration cases (one for each sales contract), the Arbitration Tribunal (the "Arbitration Panel") later consolidated and merged them into a single arbitration proceeding.

On April 19, 2017 and October 27, 2017, the Arbitration Panel held hearings on the various procedural and substantive disputes between the parties.  Ultimately, the Panel found that petitioners had rightfully terminated the three sales contracts with New Monarch because of serious quality problems with the goods in question.

On June 28, 2018, the Arbitration Panel rendered an Arbitral Award (the "Arbitral Award") in favor of petitioners in the amount of $2,407,385.00 plus interest payable within thirty days.  New Monarch did not pay the Award.  This petition followed.

---

[3] Initially established by the People's Republic of China in 1954, CIETAC "operates independently of the Chinese government, with CIETAC arbitrators having the power to issue awards that Chinese law will recognize as 'final and binding.'"  *In Re Guo*, 965 F.3d 96, 100–101 (2d Cir. 2020).

## III.  **LEGAL STANDARD**

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  "[T]he purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).  Consequently, the Act creates a "strong presumption in favor of enforcing arbitration awards." *Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir. 1994).

To effectuate its purpose, the FAA also "provides for expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008).  However, courts have an "extremely limited" role in reviewing such awards. *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019).  "Indeed, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Salus Cap. Partners, LLC v. Moser*, 289 F. Supp. 3d 468, 476 (S.D.N.Y. 2018) (cleaned up).

Importantly, though, the Act does not "independently confer subject matter jurisdiction on the federal courts." *Scandinavian Reinsurance Co. Ltd. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (cleaned up).  Instead, "there must be an independent basis of jurisdiction before a district court may entertain petitions to confirm or vacate an award

under the FAA." *Id*.  As relevant here, the New York Convention governs the
enforcement of arbitral awards stemming from disputes that are "commercial
and . . . not entirely between citizens of the United States." *Republic of
Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) (citation omitted).

"Congress implemented the New York Convention by enacting Chapter 2
of the Federal Arbitration Act." *Goel v. Ramachandran*, 823 F. Supp. 2d 206,
210 (S.D.N.Y. 2011).  Under Section 207 of the Act, any party may, "[w]ithin
three years after an arbitral award . . . is made, . . . apply to any court having
jurisdiction . . . for an order confirming the award."  9 U.S.C. § 207.

## IV.  DISCUSSION

Petitioners contend that they are entitled to an order confirming the
Arbitral Award because they have satisfied all of their obligations under the
FAA and the New York Convention.  *See* Pets.' Mem., Dkt. No. 13.[4]  In
opposition, New Monarch offers three reasons why the Award should not be
confirmed: (1) the arbitration was not conducted in accordance with
CIETAC's own procedures and rules; (2) the Award is against the public
policy of the United States; and/or (3) the Award includes attorney's fees,
which are outside the scope of the parties' arbitration agreements.  Resp't
Mem., Dkt. No. 29 at 6–11.

---

[4]  Pagination corresponds to CM/ECF.

"When a party applies to confirm an arbitral award under the New York Convention, '[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) (quoting 9 U.S.C. § 207).[5]  Under Article V of the Convention, the grounds for refusing to recognize or enforce a foreign arbitral award are:

> (1)(a) The parties to the agreement were under some incapacity, or the agreement is not valid under the law;
>
> (1)(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;
>
> (1)(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration;
>
> (1)(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties or, failing such an agreement, was not in accordance with the law of the country where the arbitration took place;

---

[5]  "The party seeking enforcement need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation." *Jiangsu Changlong Chems., Co., Inc. v. Burlington Bio-Med. & Sci. Corp.*, 399 F. Supp. 2d 165, 168 (E.D.N.Y. 2005).

> (1)(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made;
>
> (2)(a) The subject matter of the difference is not capable of settlement by arbitration under the law of the country where recognition and enforcement is sought; or
>
> (2)(b) The recognition or enforcement of the award would be contrary to the public policy of the country in which enforcement or recognition is sought.

*See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, (2d Cir. 1997). "[T]he party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (cleaned up). "The burden is a heavy one, as the showing required to avoid summary confirmance is high." *Id.*

## A.  CIETAC's Rules and Procedures

First, New Monarch contends that the Arbitral Award should not be confirmed because the Arbitration Panel failed to follow CIETAC's rules and procedures. Resp't Mem. at 6–7. As respondent explains, the Panel took well over a year to render a decision even though CIETAC's arbitration rules impose a six-month deadline. *Id.* at 6.

Upon review, this timeliness argument must be rejected.  "Under Article V(1)(d) [of the New York Convention], [r]espondent must show that the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place."  *BSH Hausgeräte GmbH v. Kamhi*, 291 F. Supp. 3d 437, 443 (S.D.N.Y. 2018) (cleaned up).

The "arbitration proceedings of this case [were] governed by the Arbitration Rules of the Arbitration Commission effective as of January 1st, 2015."  Ex. D to Pet., Dkt. No. 8-5 at 10.  Article 48 of these Rules require a CIETAC arbitration panel to render an award within six months unless the tribunal receives permission from the President of the Arbitration Court to extend the deadline.  Ex. 1 to Ping Yu Decl., Dkt. No. 29-9 at 25.

Contrary to New Monarch's argument, the Arbitration Panel appears to have complied with this Rule.  The certified English translation of the Arbitral Award explicitly states that the Panel sought and received permission to extend the deadline from the President of the Arbitration Court.  Ex. D to Pet., Dkt. No. 8-5 at 12 ("To meet the needs of the ongoing proceedings, upon application by the arbitration tribunal, the president of the court of arbitration agreed and decided to extend the time deadline for making a verdict on the case to June 28th, 2018.").

In short, New Monarch has not shown that the "the arbitral procedure was not in accordance with the agreement of the parties" and therefore has not carried its "heavy" burden of proving that the Article V(1)(d) defense applies.  Accordingly, this argument must be rejected.

## B.  <u>Public Policy</u>

Second, New Monarch contends that the Arbitral Award should not be confirmed because the Arbitration Panel's long delay in rendering a decision "is against the public policy of the United States calling for just and expeditious resolution of disputes."  Resp't Mem. at 8–10.

New Monarch's public policy argument is actually two-fold: that the one-year period between the final hearing (on October 27, 2017) and the Arbitration Panel's entry of a final Award (on June 28, 2018) took too long and that, during this long delay, U.S.–Chinese trade relations deteriorated, making it "impossible for an American company like New Monarch to get a fair shake before the Chinese-based CIETAC."  Resp't Mem. at 8–9.

Upon review, this argument will also be rejected.  "Article V(2)(b) [of the New York Convention] allows a court to refuse enforcement of an arbitration award where enforcement would violate the forum state's public policy."  *Yukos Cap. S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8, 11 (2d Cir. 2014) (summary order).  However, the public policy defense in Article V(2)(b) must be "construed very narrowly to encompass only those circumstances

where enforcement would violate our most basic notions of morality and justice." *Telenor Mobile Commc'n's AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009) (cleaned up).

As an initial matter, the Second Circuit has explicitly recognized that CIETAC is an organization that "operates independently of the Chinese government." *In Re Guo*, 965 F.3d at 101. But even assuming CIETAC was in some way affiliated with the Chinese government, this argument boils down to an assertion that the confirmation of a foreign arbitral award somehow hinges on the current state of trade relations between signatories to the New York Convention.

That is not the law. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

In sum, New Monarch has not shown that confirming a monetary arbitral award won by a foreign party in a contract dispute over the delivery of commercial goods would "be directly at odds with a well[-]defined and dominant [American] public policy resting on clear law and legal

precedent." *St. Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 46 (2d Cir. 1997).  Accordingly, this argument will be rejected.

## C.  <u>The Panel's Award of Attorney's Fees</u>

Third, New Monarch contends that the Arbitral Award should not be confirmed because it improperly includes an award of attorney's fees.  Resp't Mem. at 10–11.  According to respondent, the contractual arbitration clause in each of the three sales contracts "does not provide for an award of attorney's fees and costs in excess of the arbitration fee."  *Id*. at 10.

Upon review, this argument must be rejected.  The arbitration clause in each sales contract states that the "[a]rbitration fee shall be borne by the losing party."  According to New Monarch, this quoted language "does not provide for an award of attorney's fees and costs in excess of the arbitration fee."  Resp't Mem. at 10.

But New Monarch's assertion is begging the question.  It relies on the implicit premise that the definition of "arbitration fee" necessarily excludes attorney's fees or other costs associated with the arbitration.  And that might be true, but the burden of establishing a defense invoked under Article V of the New York Convention lies with the respondent.  Respondent not pointed to a clear definition of this contract term—whether in the sales contracts, the rules and procedures governing CIETAC arbitration, or Chinese law—that would support its desired conclusion.

Equally problematic for this argument is the fact that the rules and procedures governing the arbitration appear to explicitly permit the tribunal to award attorney's fees.  As relevant here, Article 52 of CIETAC's Arbitration Rules empower the Arbitration Panel to:

> decide in the arbitral award, having regard to the circumstances of the case, that the losing party shall compensate the winning party for the expenses reasonably incurred by it in pursuing the case.  In deciding whether or not the winning party's expenses incurred in pursuing the case are reasonably, the arbitral tribunal shall take into consideration various factors such as the outcome and complexity of the case, the workload of the winning party and/or its representative(s), the amount in dispute, etc.

Ex. 1 to Ping Yu Decl., Dkt. No. 29-9 at 27.

This language allocates authority to the Arbitration Panel to award attorney's fees in an appropriate case.  New Monarch has not pointed to any clear basis on which to conclude that the parties (in the sales contracts or elsewhere) intended to limit the authority that is otherwise conferred on the Panel by these Arbitration Rules.  *Cf. In re Arb. Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Adm'rs*, 785 F. Supp. 2d 411, 419 (S.D.N.Y. 2011) (rejecting similar argument where parties "used expansive language").  Thus, especially in light of the substantial deference owed to foreign arbitration awards, this argument must also be rejected.

## D. <u>Remaining Matters</u>

In addition to confirmation of the Arbitral Award, the verified petition also requests (1) the entry of pre-judgment interest running from July 27, 2018 and (2) an award of attorney's fees related to the additional costs of bringing this confirmation proceeding in federal court.  Dkt. No. 8 at 6.

Upon review, petitioner's request for pre-judgment interest will be denied.  There is a general presumption in favor post-award, pre-judgment interest.  *In re Arb. Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005).  However, such an award is only appropriate if it would be "fair, equitable and necessary to compensate the wronged party."  *Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers, AFL-CIO*, 955 F.2d 831, 835 (2d Cir. 1992).

Petitioners have failed to identify any provision of the Arbitration Panel's Award that would support the entry of pre-judgment interest.  *Cf. Oracle Co. v. Wilson*, 276 F. Supp. 3d 22, 34 (S.D.N.Y. 2017) ("[C]ourts in this Circuit have found that a district court may not provide prejudgment interest if the Arbitrator's award is silent on such interest.").  Nor have they indicated the rate of interest they seek, or explained why that rate would be appropriate under the governing law.  In short, because petitioners have failed to

establish that an award of pre-judgment interest in this case would be "fair, equitable and necessary," the request will be denied.

Petitioners' request for additional attorney's fees will also be denied. "The FAA does not provide for an award of attorney's fees and expenses for arbitration- confirmation proceedings, but a court remains authorized to enter such an award pursuant to its inherent equitable powers." *Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 106 (W.D.N.Y. 2019) (cleaned up). "In the arbitration context, the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.*

Upon review, that standard has not been met. *Cf. Seneca Nation of Indians*, 420 F. Supp. 3d at 106 ("Such awards may be made, for example, when a party pursues a frivolous course."). Even assuming otherwise, petitioners have failed to substantiate their request with contemporaneous time records or other supporting documentation. Accordingly, the request for attorney's fees will also be denied.

## V.  <u>CONCLUSION</u>

Petitioners' motion to confirm the Award will be granted. However, petitioners' requests for pre-judgment interest and for attorney's fees incurred in bringing this confirmation action will be denied.

Therefore, it is

ORDERED that

1.  The Arbitral Award is CONFIRMED; and

2.  Judgment shall be entered in the amount of $2,407,385.00.[6]

The Clerk is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.


Dated:  August 3, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge

---

[6] Post-judgment interest shall accrue on the full amount of the judgment in accordance with 28 U.S.C. § 1961(a) because "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996).